# Exhibit A

**CERTIFIED** MAIL

**CPU**

U.S. POSTAGE
$9.16
FCMF    RDC
Orig: 85260
Dest: 14450
11/25/24
2000052320
S2324E500694

**USPS CERTIFIED MAIL**



9207 1901 4298 0410 4914 45

**CERTIFIED MAIL**

Mariamou Tangara
Mariamou Tangara
1300 Fairmount Ave
706
Philadelphia PA 19123
mtangara002@gmail.com



0010666232000011
Pamela Baird
200 CROSSKEYS OFFICE PARK
FAIRPORT NY 14450

**Mariamou Tangara**
1300 Fairmount Ave, 706
Philadelphia, PA
mtangara002@gmail.com
Date: November 25, 2024

**Pamela Baird, Robert Leni**
Continental Service Group, LLC et al.
200 CROSSKEYS OFFICE PARK
FAIRPORT, NY 14450

**Re: Case No. GD-24-013405 (Tangara v. Continental Service Group, LLC et al.)**

Dear ConServe,

I am writing regarding the legal matter involving **Mariamou Tangara** and your organization, which has been filed as Case No. **GD-24-013405** in the Allegheny County Court of Common Pleas, Civil Division. This correspondence accompanies a package of critical documents, including:

1. The **Complaint Pleading**;

2. A **Discovery Request** outlining documents and information relevant to this matter;

3. The **Praecipe for Writ of Summons**; and

4. The **Writ of Summons**.

The attached complaint thoroughly outlines the allegations against your organization, including violations of federal and Pennsylvania law. It reflects significant harm caused to Ms. Tangara's credit, finances, educational opportunities, and emotional and physical well-being.

As this matter proceeds, I trust that your organization will recognize the seriousness of the claims and the potential consequences of prolonged litigation. While I have no doubt that the

legal claims asserted are meritorious and fully supported by the facts and applicable law, I also understand that litigation can be both costly and time-consuming for all parties involved.

To that end, I encourage you to carefully review the complaint and supporting documents and consider whether a collaborative resolution might better serve your interests. An approach focused on constructive engagement could allow both parties to avoid the uncertainty and expense associated with extended court proceedings.

It is important to note that this matter involves significant potential liability, including statutory damages, actual damages, treble damages, and punitive damages, in addition to attorneys' fees and costs. The documentation attached to this package details the severity of the allegations, the extent of harm suffered by Ms. Tangara, and the legal remedies available under federal and state law.

Should you wish to discuss this matter further, I am open to facilitating a constructive conversation and encourage you to reach out at your earliest convenience. My email is provided above, and I am available to discuss this matter at a mutually convenient time.

Thank you for your prompt attention to this matter. I look forward to hearing from you.

Sincerely,

Mariamou Tangara

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

Case No.: GD-24-013405
Mariamou Tangara,
Plaintiff,

v.

Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management;
ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc.,
Defendants.

## NOTICE TO DEFEND

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

## LAWYER REFERRAL SERVICE

Allegheny County Bar Association

Koppers Building

436 Seventh Avenue

Pittsburgh, PA 15219

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

**Case No.: GD-24-013405**

---

**Mariamou Tangara,**

Plaintiff,

v.

**Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management; ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc.,**
Defendants.

**CIVIL COMPLAINT**

---

**PRELIMINARY STATEMENT**

1. This is a civil action brought by Plaintiff, Mariamou Tangara, against Defendants, collectively referred to as ConServe, for their unlawful debt collection practices, improper credit reporting, negligent actions, and intentional misconduct, which have caused significant harm to Plaintiff's credit, finances, reputation, and emotional

2. Defendants engaged in systemic violations of federal and Pennsylvania laws by reporting an inflated and unsubstantiated debt to credit reporting agencies without providing Plaintiff any notice or opportunity to dispute the debt.

3. Plaintiff, a former student of the University of Pittsburgh in Allegheny County, Pennsylvania, relied on financial aid and loans to support her education. Defendants' actions not only damaged Plaintiff's credit but also deprived her of the ability to secure additional loans necessary to continue her education and professional career.

4. Despite Plaintiff's repeated efforts to resolve this matter amicably, including offering to mediate, Defendants refused to address the harm they caused, leaving Plaintiff with no alternative but to seek legal redress.

5. Plaintiff seeks damages and equitable relief for violations of federal laws, including the Fair Debt Collection Practices Act (FDCPA) and Fair Credit Reporting Act (FCRA), as well as Pennsylvania laws, including the Fair Credit Extension Uniformity Act (FCEUA) and Unfair Trade Practices and Consumer Protection Law (UTPCPL). Plaintiff also asserts common law claims for breach of contract, negligence, unjust enrichment, tortious interference, defamation, and intentional infliction of emotional distress.

**PARTIES**

6. Plaintiff, Mariamou Tangara, is an adult individual residing in Pennsylvania. At all relevant times, Plaintiff was a graduate student at the University of Pittsburgh, located in Allegheny County, Pennsylvania, where the alleged debt at issue originated.

7. Defendant, Continental Service Group, LLC, is a debt collection agency with its principal office located in New York state. Defendants operate under various trade

Inc., Conserve, NY, ConServe-ARM, and ConServe-ARM, Inc., and conduct business in Allegheny County, Pennsylvania.

8. Defendants are engaged in debt collection and credit reporting activities that affect consumers throughout Pennsylvania, including Plaintiff, and are jointly and severally liable for the acts and omissions described in this Complaint.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to 42 Pa.C.S. § 931(a) because the amount in controversy exceeds the statutory threshold, and the claims arise under Pennsylvania and federal laws, including the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA).

10. Venue is proper in Allegheny County pursuant to Pa.R.C.P. No. 2179(a)(1), (2), and (4) because:

   a. Defendants regularly conduct business in Allegheny County, Pennsylvania;

   b. The University of Pittsburgh, where the alleged debt originated, is located in Allegheny County, Pennsylvania; and

   c. The acts and omissions giving rise to Plaintiff's claims occurred in Allegheny County, Pennsylvania.

11. The relationship between Plaintiff, Defendants, and the University of Pittsburgh creates a significant nexus to Allegheny County, making this Court the appropriate forum to adjudicate this matter.

12. This action arises exclusively under state and federal laws, and Plaintiff asserts no claims under federal jurisdiction that would preempt the authority of this Court. Maintaining this case in Pennsylvania state court ensures the most appropriate venue

## FACTUAL ALLEGATIONS

13. Plaintiff, Mariamou Tangara, is an adult individual residing in Pennsylvania. At all relevant times, Plaintiff was a graduate student pursuing higher education and required financial aid and loans to support her academic and professional aspirations.

14. Defendants, collectively referred to as ConServe, are entities engaged in the business of debt collection and credit reporting under various trade names, including Conserve Accounts Receivable Management, ConServe, Inc., Conserve, NY, ConServe-ARM, and others. Defendants operate as a single enterprise and are jointly and severally liable for the actions described herein.

15. On or about November 21, 2023, Defendants received a report from the University of Pittsburgh regarding an alleged debt of $6,483 owed by Plaintiff. This amount included improperly assessed fees, such as a $100 fee and a subsequent $200 fee, which were added arbitrarily to the principal amount.

16. Without providing any form of communication or notice to Plaintiff, Defendants inflated the alleged debt to $8,103 by adding an excessive and arbitrary "collection cost percentage," as encouraged by their own "Collection Cost: Make Whole Method."

17. Defendants failed to send Plaintiff any debt validation notice, in violation of federal and state laws, thereby denying Plaintiff her right to dispute or verify the validity of the alleged debt.

18. Despite having no communication with Plaintiff and no verification of the alleged debt, Defendants reported the inflated amount of $8,103 to multiple credit reporting agencies. This false reporting caused significant damage to Plaintiff's credit score and

19. The debt validation notice Defendants claim to have sent was addressed to P.O. Box 3848, Pittsburgh, PA 15230-3848, a postal box that Plaintiff did not own or control. As a result, a third party received Plaintiff's sensitive personal and financial information, violating her privacy and exposing her to further risk of harm.

20. By reporting this alleged debt to credit reporting agencies before providing proper notice or validation, Defendants further compounded the harm to Plaintiff, depriving her of the opportunity to dispute or pay off the alleged debt to prevent credit damage.

21. The reporting of the inflated debt to credit agencies caused Plaintiff's credit score to drop significantly, directly resulting in her inability to secure a private student loan necessary to continue her education at New York University.

22. Due to Defendants' actions, Plaintiff's education and career have been delayed by at least one year, causing her to lose a year's worth of salary as a pharmacist and incur additional educational expenses.

23. Plaintiff made multiple attempts to resolve the matter amicably, including requesting validation of the alleged debt and offering to participate in mediation. Defendants, however, refused to engage in any meaningful resolution process.

24. Defendants' "Collection Cost: Make Whole Method," a document attached to their website, encourages creditors to inflate debts by arbitrarily adding a "collection cost percentage," ensuring that Defendants receive higher compensation. This practice is both deceptive and unfair, leading to inflated and unjustified debt amounts that harm consumers.

25. Defendants' failure to validate the alleged debt, refusal to engage in good faith resolution efforts, and false reporting of an inflated debt amount were not isolated mistakes but part of a systematic pattern of abuse and misconduct.

26. The University of Pittsburgh's financial statement further confirms that the alleged debt lacks validity. The statement classifies Plaintiff as an undergraduate student during a period when she was enrolled in a pharmacy program, which is exclusively a graduate-level program. This discrepancy highlights the inaccuracies in the underlying debt.

27. Defendants failed to reconcile numerous inconsistencies in the documents associated with the alleged debt, including mismatched account numbers and amounts, further undermining the validity of their collection efforts.

28. In communications with Plaintiff, Defendants admitted they did not possess proof of the alleged debt's validity prior to furnishing it to credit reporting agencies. By failing to obtain documentation substantiating the alleged debt before reporting it, Defendants demonstrated gross negligence and a willful disregard for their duties under the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), and Pennsylvania Fair Credit Extension Uniformity Act (FCEUA). This admission further supports the conclusion that the alleged debt is invalid and improperly reported.

29. Defendants' actions caused Plaintiff severe financial harm, emotional and physical distress, and reputational damage. Plaintiff was forced to take on additional expenses, suffered damage to her health due to stress-related medical conditions, and has been left with an uncertain future as a result of Defendants' misconduct.

30. Despite Plaintiff's tireless efforts to address these issues without court intervention, including requests for mediation and resolution, Defendants willfully shut down their legal obligations and continued their harmful practices, leaving Plaintiff with no choice but to seek legal redress through this action.

## FIRST CAUSE OF ACTION: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

31. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

32. Defendants are "debt collectors" as defined under 15 U.S.C. § 1692a(6) because they regularly collect or attempt to collect debts owed or due to another party.

33. Plaintiff is a "consumer" as defined under 15 U.S.C. § 1692a(3) because the alleged debt at issue was incurred primarily for personal, family, or household purposes.

34. The alleged debt constitutes a "debt" under 15 U.S.C. § 1692a(5) as it is a financial obligation arising out of a transaction for goods, services, or credit primarily for personal, family, or household purposes.

35. Defendants violated 15 U.S.C. § 1692g(a) by failing to send Plaintiff, within five days of their initial communication, a written notice containing:

    a. The amount of the debt;

    b. The name of the creditor to whom the debt is owed;

    c. A statement of Plaintiff's right to dispute the debt within thirty days;

    d. A statement that Defendants would provide verification of the debt if requested by Plaintiff; and

    e. A statement that Defendants would provide the name and address of the original creditor if requested by Plaintiff.

36. Defendants violated 15 U.S.C. § 1692e by making false, deceptive, and misleading representations in connection with the collection of a debt, including but not limited to:

    b.   Falsely implying that Plaintiff owed the debt when Defendants lacked sufficient documentation to substantiate its validity; and

    c.   Reporting the inflated debt to credit reporting agencies as valid despite knowing it was unverified and inaccurate.

37. Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the alleged debt when they failed to validate the debt and inflated the amount reported to credit bureaus.

38. Defendants violated 15 U.S.C. § 1692e(8) by communicating false credit information to credit reporting agencies, including reporting the alleged debt without notifying Plaintiff or providing an opportunity to dispute it.

39. Defendants violated 15 U.S.C. § 1692f by engaging in unfair and unconscionable means to collect a debt, including:

    a.   Arbitrarily adding inflated collection costs without justification or legal authority; and

    b.   Failing to conduct reasonable due diligence to ensure the debt was accurate and valid before attempting collection or reporting it to credit bureaus.

40. Defendants violated 15 U.S.C. § 1692c(b) by communicating information about the alleged debt to unauthorized third parties, including credit reporting agencies, without prior consent from Plaintiff or authorization permitted by law.

41. Defendants' violations of the FDCPA caused significant harm to Plaintiff, including damage to her credit score, financial hardship, emotional distress, and harm to her educational and professional opportunities.

42. As a direct and proximate result of Defendants' actions, Plaintiff is entitled to:

    a.   Statutory damages as provided under 15 U.S.C. § 1692k(a)(2)(A);

b.  Actual damages for financial loss and emotional distress under 15 U.S.C. § 1692k(a)(1);

c.  Attorneys' fees and costs as provided under 15 U.S.C. § 1692k(a)(3);

d.  Such other relief as the Court deems just and equitable.

## SECOND CAUSE OF ACTION: VIOLATION OF REGULATION F (12 C.F.R. PART 1006)

13. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

14. Defendants are "debt collectors" as defined under 12 C.F.R. § 1006.2(i), as they regularly collect or attempt to collect debts owed or due to another party.

15. Plaintiff is a "consumer" under 12 C.F.R. § 1006.2(e) because the alleged debt arises from a transaction for personal, family, or household purposes.

16. The alleged debt constitutes a "debt" under 12 C.F.R. § 1006.2(f) as it is a financial obligation arising from a transaction for personal, family, or household purposes.

17. Defendants violated 12 C.F.R. § 1006.34(a) by failing to provide a debt validation notice within five days of their initial communication with Plaintiff, including:

a.  The amount of the debt;

b.  The name of the creditor to whom the debt is owed;

c.  Information about Plaintiff's right to dispute the debt or request validation; and

d.  A statement about Plaintiff's rights under the Fair Debt Collection Practices Act.

18. Defendants violated 12 C.F.R. § 1006.6(b)(1) by communicating with Plaintiff at an unusual or inconvenient place. Specifically, Defendants sent a time-sensitive

and inconvenient for Plaintiff, resulting in a third party receiving Plaintiff's personal and financial information.

19. Defendants violated 12 C.F.R. § 1006.6(d)(1) by communicating with an unauthorized third party regarding the alleged debt. By sending the validation notice to an incorrect postal box, Defendants knowingly disclosed Plaintiff's sensitive financial information to an unpermitted third party, causing significant harm to Plaintiff's privacy and dignity.

20. Defendants violated 12 C.F.R. § 1006.30(a) by furnishing information about the alleged debt to consumer reporting agencies before:

   a. Sending a validation notice as required under 12 C.F.R. § 1006.34(a); and

   b. Verifying the accuracy and validity of the debt.

21. Defendants violated 12 C.F.R. § 1006.18(a) by using false, deceptive, or misleading representations in connection with the collection of the alleged debt, including:

   a. Falsely inflating the debt amount to $8,103 without legal or contractual justification;

   b. Misrepresenting the character, amount, and status of the alleged debt to credit reporting agencies; and

   c. Implying that the debt was valid and collectible despite lacking the documentation to substantiate it.

22. Defendants violated 12 C.F.R. § 1006.22(a) by engaging in unfair and unconscionable practices, including:

   a. Arbitrarily adding inflated collection fees to increase the alleged debt;

   b. Failing to verify the accuracy of the debt before attempting to collect it or furnishing it to credit reporting agencies; and

    c. Reporting an inflated and unsubstantiated debt to credit reporting agencies, thereby causing significant harm to Plaintiff's credit and finances.

23. Defendants violated 12 C.F.R. § 1006.42(a) by failing to deliver the required validation notice in a manner that would allow Plaintiff to access, keep, and review the information. By sending the notice to an incorrect postal box, Defendants deprived Plaintiff of her legal right to dispute or address the debt.

24. Defendants' violations of Regulation F caused significant harm to Plaintiff, including: a. Damage to her credit score due to the improper reporting of an inflated and unverified debt; b. Inability to secure a private student loan, leading to educational and professional delays; and c. Emotional distress stemming from Defendants' actions, which were invasive, deceptive, and negligent.

25. As a direct and proximate result of Defendants' violations of Regulation F, Plaintiff is entitled to all remedies provided under 15 U.S.C. § 1692k and 12 C.F.R. Part 1006, including actual damages, statutory damages, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)

26. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

27. Defendants are "furnishers of information" as defined under 15 U.S.C. § 1681s-2, as they regularly provide information about consumer debts to credit reporting agencies.

28. Plaintiff is a "consumer" under 15 U.S.C. § 1681a(c) because the alleged debt pertains to personal, family, or household purposes.

29. The alleged debt constitutes "information" under 15 U.S.C. § 1681a(d)(1) that Defendants reported to one or more "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f).

30. Defendants violated 15 U.S.C. § 1681s-2(a)(1) by furnishing inaccurate information about Plaintiff to credit reporting agencies, specifically:

    a. Reporting a debt amount of $8,103, which was inflated beyond the original $6,483 alleged by the University of Pittsburgh; and

    b. Failing to substantiate the accuracy of the alleged debt before furnishing it.

31. Defendants violated 15 U.S.C. § 1681s-2(a)(3) by failing to notify credit reporting agencies that the alleged debt was disputed, despite having knowledge or reason to believe that Plaintiff did not owe the debt as reported.

32. Defendants violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after Plaintiff disputed the debt, including:

    a. Failing to verify the debt's accuracy with the original creditor;

    b. Failing to reconcile discrepancies in the amount of the debt and the account numbers associated with it; and

    c. Failing to update or correct the inaccurate information reported to credit reporting agencies.

33. Defendants' violations of the FCRA directly harmed Plaintiff by:

    a. Causing a significant drop in her credit score, which damaged her financial reputation;

    b. Preventing her from obtaining a private student loan, thereby delaying her education and career;

    c. Subjecting her to financial hardship, as she incurred additional costs and lost

  d. Causing emotional and physical distress and reputational harm.

34. Defendants' actions were willful, in violation of 15 U.S.C. § 1681n, as they acted with reckless disregard for their legal obligations by:

  a. Failing to verify the accuracy of the alleged debt before furnishing it;

  b. Ignoring their duty to investigate and correct inaccuracies once Plaintiff disputed the debt; and

  c. Knowingly reporting inflated and false debt information to credit reporting agencies.

35. In the alternative, Defendants' actions were negligent, in violation of 15 U.S.C. § 1681o, because they failed to exercise reasonable care in their reporting and investigation processes.

36. As a result of Defendants' willful or negligent violations of the FCRA, Plaintiff suffered economic harm, reputational damage, and severe emotional distress that manifested in physical symptoms.

37. Plaintiff is entitled to recover:

  a. Actual damages for financial and emotional harm caused by Defendants' violations under 15 U.S.C. § 1681n(a)(1)(A) and 15 U.S.C. § 1681o(a)(1);

  b. Statutory damages under 15 U.S.C. § 1681n(a)(1)(A);

  c. Punitive damages for willful violations under 15 U.S.C. § 1681n(a)(2); and

  d. Attorneys' fees and costs under 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2).

**FOURTH CAUSE OF ACTION: VIOLATION OF THE PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT (FCEUA)**

38. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

39. The Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 et seq., applies to Defendants as "debt collectors" because they regularly engage in the business of collecting debts owed or alleged to be owed to another, as defined under 73 P.S. § 2270.3.

40. Plaintiff is a "consumer" under 73 P.S. § 2270.3 because the alleged debt arose from a transaction primarily for personal, family, or household purposes.

41. The alleged debt qualifies as a "debt" under 73 P.S. § 2270.3 because it is a financial obligation incurred by a consumer for personal, family, or household purposes.

42. The FCEUA incorporates the standards and requirements of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., for debt collectors, as outlined in 73 P.S. § 2270.4(a). Violations of the FDCPA constitute per se violations of the FCEUA.

43. As alleged above, Defendants violated the FDCPA through their actions, which also constitute violations of the FCEUA, including but not limited to:

   a. Failing to provide Plaintiff with a validation notice as required under 15 U.S.C. § 1692g;

   b. Misrepresenting the amount of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A);

   c. Reporting false and inaccurate information to credit reporting agencies, violating 15 U.S.C. § 1692e(8);

   d. Communicating with unauthorized third parties about the alleged debt, in violation of 15 U.S.C. § 1692c(b); and

   e. Engaging in unfair and unconscionable debt collection practices, in violation

44. Defendants further violated the FCEUA by attempting to collect an inflated debt amount that included arbitrary and unauthorized collection fees, in contravention of 73 P.S. § 2270.4(b), which prohibits unfair and unconscionable debt collection practices.

45. Defendants violated the FCEUA by falsely representing that Plaintiff owed the debt without validating it and failing to investigate its accuracy after Plaintiff disputed it, thereby engaging in deceptive conduct prohibited under 73 P.S. § 2270.4(a).

46. Defendants' violations of the FCEUA caused substantial harm to Plaintiff, including:

    a.  Damage to her creditworthiness and financial reputation due to the improper reporting of an inflated debt amount;

    b.  Emotional distress resulting from Defendants' abusive and negligent practices;

    c.  Financial harm from the inability to secure a private student loan necessary to continue her education; and

    d.  Educational and career delays, leading to lost wages and increased financial burdens.

47. Under 73 P.S. § 2270.5(a), a violation of the FCEUA constitutes a per se violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq., entitling Plaintiff to statutory remedies under the UTPCPL.

48. As a result of Defendants' violations of the FCEUA, Plaintiff is entitled to actual damages, treble damages, attorneys' fees, and costs pursuant to the remedies provided under the UTPCPL.

**FIFTH CAUSE OF ACTION: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

49. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

50. The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq., prohibits unfair or deceptive acts or practices in the conduct of trade or commerce, including those affecting the collection of consumer debts.

51. Plaintiff is a "person" as defined under 73 P.S. § 201-2(2), and the alleged debt arises from "trade" or "commerce" as defined under 73 P.S. § 201-2(3), which includes any commercial activity involving services or financial obligations primarily for personal, family, or household purposes.

52. Defendants engaged in "unfair methods of competition" and "unfair or deceptive acts or practices" in violation of 73 P.S. § 201-3 by committing the following acts, including but not limited to:

   a. Representing that Plaintiff owed a debt amount of $8,103, which was false, deceptive, and misleading because it included inflated and arbitrary collection fees;

   b. Failing to provide Plaintiff with a validation notice or accurate information about the debt's amount, origin, and creditor, thereby depriving Plaintiff of her right to dispute or verify the debt;

   c. Reporting an inflated and unverified debt amount to credit reporting agencies, damaging Plaintiff's credit and financial reputation;

   d. Failing to investigate the validity of the debt after Plaintiff disputed it, resulting in continued harm to Plaintiff's creditworthiness; and

   e. Using unfair and unconscionable debt collection practices by improperly applying a "Collection Cost: Make Whole Method" to inflate the debt amount

53. Defendants' actions violated 73 P.S. § 201-2(4)(xxi), which prohibits any act or practice deemed fraudulent or deceptive under federal law, including violations of the FDCPA and FCEUA.

54. Pursuant to 73 P.S. § 2270.5(a), Defendants' violations of the FCEUA constitute per se violations of the UTPCPL, as the FCEUA incorporates the FDCPA standards for debt collection practices.

55. Defendants' deceptive and unfair practices caused Plaintiff to suffer actual damages, including:

    a. Significant harm to her credit score due to the false reporting of an inflated debt amount;

    b. Financial hardship, as she was unable to secure a private student loan to continue her education;

    c. Lost educational and professional opportunities, including delayed graduation and lost wages as a pharmacist;

    d. Increased educational costs from an additional year of tuition; and

    e. Emotional distress stemming from the damage to her financial reputation and the stress caused by Defendants' actions.

56. Defendants' conduct was willful, knowing, and reckless, warranting the imposition of treble damages under 73 P.S. § 201-9.2(a).

57. Under 73 P.S. § 201-9.2(a), Plaintiff is entitled to recover actual damages, treble damages, attorneys' fees, and costs as a result of Defendants' violations of the UTPCPL.

58. Defendants' violations of the UTPCPL, coupled with their refusal to address or resolve the harm caused despite Plaintiff's repeated attempts to mediate, demonstrate

a deliberate and egregious disregard for consumer protection laws and the rights of Plaintiff.

## SIXTH CAUSE OF ACTION: BREACH OF IMPLIED CONTRACT

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Under Pennsylvania law, to plead a breach of contract claim, a plaintiff must demonstrate:

a. The existence of a valid and enforceable contract;

b. Performance or tender of performance by the plaintiff;

c. A material breach by the defendant; and

d. Damages resulting from the breach.

J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).

61. A fundamentally contractual relationship existed between Plaintiff and the University of Pittsburgh. *see* Swartley v. Hoffner

62. Defendants, acting as the University of Pittsburgh's debt collection agents, were bound by the terms of the contract, including their obligation to act in good faith and to comply with all applicable laws governing the collection and reporting of alleged debts.

63. Under Pennsylvania law, every contract includes an implied duty of good faith and fair dealing, which requires parties to act honestly and fairly in the performance of their contractual obligations.

D----b--- - F-d- F------ C---- 753 A.2d 238, 242 (Pa. Super. Ct. 2000)

64. Defendants breached the terms of the implied contract and their duty of good faith and fair dealing by:

    a.   Inflating the debt amount by improperly adding arbitrary and excessive collection fees without contractual or legal authority;

    b.   Failing to accurately account for or validate the debt owed under the terms of the Financial Responsibility Agreement cited by Defendants throughout multiple communications;

    c.   Failing to ensure that proper and accurate notice of the alleged debt was provided to Plaintiff; and

    d.   Reporting an unverified and inflated debt amount to credit reporting agencies, which was inconsistent with the terms and intent of the Financial Responsibility Agreement.

65. Pennsylvania law prohibits the enforcement of liquidated damages provisions or contractual terms that are unconscionable, unreasonable, or impose penalties disproportionate to the harm caused. 13 Pa.C.S. § 2718; Ashcraft v. C.G. Hussey & Co., 27 A.2d 219, 221 (Pa. 1942).

66. The collection fees imposed by Defendants, which exceeded 33% of the principal debt, constitute unreasonable liquidated damages and are void as a penalty under Pennsylvania law.

67. Furthermore, the Financial Responsibility Agreement cited by Defendants is substantively unconscionable under Pennsylvania contract law:

    a.   Substantive Unconscionability: The agreement allowed for exorbitant collection fees and penalties that disproportionately burdened Plaintiff, creating terms so one-sided as to be oppressive.

68. Defendants' breaches of the contract and their failure to comply with Pennsylvania's contractual standards caused Plaintiff to suffer significant damages, including:

   a. Financial harm from inflated debt amounts and improper credit reporting;

   b. Damage to her credit score, leading to the inability to secure a private student loan to continue her education;

   c. Educational and career delays, resulting in lost professional wages as a pharmacist and increased educational expenses; and

   d. Emotional distress stemming from Defendants' breaches and the harm caused to her financial reputation.

69. Defendants' actions also violated the implied covenant of good faith and fair dealing under Pennsylvania law, which prohibits deceptive, unfair, or unreasonable practices that frustrate the purpose of a contract. Ash v. Continental Ins. Co., 932 A.2d 877, 884 (Pa. 2007).

70. As a direct and proximate result of Defendants' breaches of contract, Plaintiff suffered actual damages, which are compensable under Pennsylvania law. Plaintiff also seeks equitable relief to void the improper and unconscionable provisions of the Financial Responsibility Agreement related to excessive collection fees and penalties.

71. Defendants' material breaches of contract, coupled with their failure to act in good faith, demonstrate willful and egregious misconduct that entitles Plaintiff to recover all damages available under Pennsylvania law.

## SEVENTH CAUSE OF ACTION: NEGLIGENCE

72. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Under Pennsylvania law, a claim for negligence requires the plaintiff to establish:

    a. The existence of a legal duty owed by the defendant to the plaintiff;

    b. A breach of that duty;

    c. A causal connection between the breach and the harm suffered; and

    d. Actual damages.

Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).

74. Defendants owed Plaintiff a legal duty of care in their roles as debt collectors and furnishers of credit information to ensure:

    a. The accuracy of the debt information reported to credit agencies;

    b. Compliance with federal and state laws governing debt collection and credit reporting, including the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), and Pennsylvania Fair Credit Extension Uniformity Act (FCEUA); and

    c. Proper and timely communication of debt validation notices to protect Plaintiff's rights under the law.

75. Defendants breached their duty of care to Plaintiff by engaging in negligent conduct, including but not limited to:

    a. Failing to verify the validity of the alleged debt before attempting to collect it or reporting it to credit reporting agencies;

    b. Reporting false and inflated debt information, which Defendants knew or should have known was inaccurate;

    c. Failing to send proper debt validation notices to Plaintiff as required by law, thereby depriving her of the opportunity to dispute the debt;

parties, including a postal box not controlled by Plaintiff; and

e. Encouraging or implementing collection practices that arbitrarily inflated the alleged debt amount without contractual or legal basis, as outlined in Defendants' "Collection Cost: Make Whole Method."

76. Pennsylvania law recognizes that a breach of a legal duty arises when a party acts in a manner that fails to meet the standard of care a reasonably prudent person would exercise under similar circumstances. Restatement (Second) of Torts § 282, as adopted in Macina v. McAdams, 421 A.2d 432, 434 (Pa. Super. Ct. 1980).

77. Defendants' actions and omissions were negligent because they failed to meet the standard of care expected of debt collectors and furnishers of credit information, as required by applicable law.

78. Defendants' negligent actions were the direct and proximate cause of Plaintiff's harm, including but not limited to:

a. Significant damage to her credit score due to the reporting of an inflated and unverified debt;

b. Inability to secure a private student loan, resulting in delayed education and career progression;

c. Financial losses from increased educational costs and lost wages; and

d. Severe emotional distress resulting from the reputational harm and financial uncertainty caused by Defendants' negligence.

79. Pennsylvania law imposes liability on parties whose negligent conduct causes foreseeable harm to others. The harm suffered by Plaintiff was a foreseeable and direct result of Defendants' failure to fulfill their legal obligations and exercise reasonable care in their debt collection and credit reporting practices. Sharpe v. St.

80. Defendants' conduct was not merely negligent but reckless, demonstrating a willful disregard for Plaintiff's rights and the consequences of their actions.

81. As a direct and proximate result of Defendants' negligence, Plaintiff suffered actual damages, including financial losses, harm to her credit and reputation, educational and professional delays, and severe emotional distress.

82. Plaintiff is entitled to recover all damages proximately caused by Defendants' negligent actions, as recognized under Pennsylvania law.

## EIGHTH CAUSE OF ACTION: UNJUST ENRICHMENT

83. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

84. Under Pennsylvania law, a claim for unjust enrichment requires the plaintiff to establish:

a. The defendant received a benefit;

b. The benefit was conferred by the plaintiff under circumstances that make it inequitable or unjust for the defendant to retain the benefit without compensating the plaintiff. Mitchell v. Moore, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999); Restatement (First) of Restitution § 1 (1937).

85. Unjust enrichment is a quasi-contractual doctrine, which applies where there is no enforceable contract, but the circumstances demand restitution to prevent unjust enrichment. Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969).

86. Plaintiff conferred a benefit on Defendants by way of alleged fees, interest, and amounts improperly added to the underlying debt without legal or contractual justification.

87. Defendants unjustly enriched themselves by:

    a. Inflating the amount of the alleged debt through the improper addition of excessive "collection costs" pursuant to their "Collection Cost: Make Whole Method";

    b. Retaining these inflated amounts as part of their compensation for alleged collection efforts; and

    c. Reporting the inflated debt to credit reporting agencies, which increased Defendants' leverage to collect the unjustified amounts from Plaintiff.

88. Pennsylvania law prohibits the retention of funds or benefits obtained through inequitable means, particularly where the benefit was conferred as a result of undue influence, mistake, or wrongful conduct. Wilson Area Sch. Dist. v. Skepton, 860 A.2d 625, 631 (Pa. Commw. Ct. 2004).

89. Defendants' receipt and retention of inflated amounts through arbitrary collection fees, without substantiating the debt or providing Plaintiff the opportunity to dispute it, are unjust and inequitable.

90. Under Pennsylvania law, a party cannot retain funds or benefits where such retention would violate principles of fairness and justice. D.A. Hill Co. v. Clevetrust Realty Inv'rs, 573 A.2d 1005, 1009 (Pa. 1990).

91. Plaintiff did not knowingly or willingly confer these excessive and unjustified benefits upon Defendants, as the inflated amounts were based on Defendants' arbitrary and deceptive practices.

92. Defendants' retention of these benefits is particularly unjust because Plaintiff has suffered significant harm, including:

    a. Damage to her credit score, preventing her from securing a private student loan;

    b. Financial losses from increased educational costs and delayed career progression;

and

c. Emotional distress caused by Defendants' actions.

93. Equity and good conscience demand that Defendants return any amounts improperly obtained or retained as a result of their actions, including the arbitrary and excessive collection costs.

94. As a result of Defendants' conduct, Plaintiff seeks restitution of all amounts improperly collected or retained, as well as any other relief necessary to prevent Defendants from being unjustly enriched at Plaintiff's expense.

## NINTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

95. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Under Pennsylvania law, a claim for tortious interference with contractual relations requires a plaintiff to establish:

a. The existence of a contractual relationship between the plaintiff and a third party;

b. Purposeful action on the part of the defendant specifically intended to harm the existing relationship;

c. The absence of privilege or justification on the part of the defendant; and

d. Actual damages resulting from the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 384 (3d Cir. 2004); Restatement (Second) of Torts § 766.

97. A valid and enforceable implied contractual relationship existed between Plaintiff and

98. Plaintiff also had contractual and prospective business relationships with private student loan providers to secure funding for her continued education.

99. Defendants intentionally and unjustifiably interfered with these contractual and prospective relationships by:

a. Reporting an inflated and unverified debt of $8,103 to credit reporting agencies, which damaged Plaintiff's credit score;

b. Failing to provide Plaintiff with notice of the alleged debt or an opportunity to dispute or validate it, as required by law; and

c. Inflating the debt amount by adding arbitrary and excessive collection fees without legal or contractual authority, thereby misrepresenting the amount owed to third parties.

100. Defendants' actions were specifically intended to harm Plaintiff's financial standing and creditworthiness, thereby impairing her ability to obtain private student loans and fulfill her contractual obligations with the University of Pittsburgh.

101. Pennsylvania law recognizes that interference with prospective contractual relationships, such as loan agreements, may also constitute tortious interference where the defendant's actions were intentional and wrongful. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979).

102. Defendants acted without privilege or justification, as their actions violated federal and state laws, including the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), and Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).

103. As a direct and proximate result of Defendants' tortious interference, Plaintiff

a. The inability to secure a private student loan to continue her education at New York University;

b. Delays in her education and career progression, resulting in lost wages as a pharmacist;

c. Increased financial costs due to an additional year of educational expenses; and

d. Emotional distress and reputational harm caused by the damage to her financial standing and creditworthiness.

104. Defendants' actions were willful, malicious, and intended to harm Plaintiff, warranting the imposition of damages to compensate Plaintiff and deter such conduct in the future.

105. Plaintiff is entitled to recover all damages proximately caused by Defendants' tortious interference with her contractual and prospective business relationships under Pennsylvania law.

## TENTH CAUSE OF ACTION: DEFAMATION

106. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

107. Under Pennsylvania law, a claim for defamation requires the plaintiff to establish:

a. The defamatory character of the communication;

b. Its publication by the defendant;

c. Its application to the plaintiff;

d. The understanding by the recipient of its defamatory meaning;

e. The understanding by the recipient that it was intended to apply to the plaintiff;

f. Special harm resulting to the plaintiff; and

42 Pa.C.S. § 8343(a)

108.    Defendants published false and defamatory statements about Plaintiff by reporting to credit reporting agencies that Plaintiff owed an inflated and unverified debt of $8,103.

109.    The statements made by Defendants regarding Plaintiff's alleged debt were defamatory because they: a. Falsely characterized Plaintiff as financially irresponsible by asserting she failed to pay a debt she did not owe;

b. Inflated the debt amount by adding arbitrary and excessive collection fees without legal or contractual basis, further misrepresenting Plaintiff's financial obligations; and

c. Implied that Plaintiff was delinquent in her financial obligations when Defendants lacked any substantiation for the debt.

110.    Defendants' publication of these false statements to credit reporting agencies constitutes "publication" under Pennsylvania defamation law. Gaetano v. Sharon Herald Co., 231 A.2d 753, 755 (Pa. 1967).

111.    The defamatory statements specifically identified Plaintiff, as the alleged debt was directly tied to her personal and financial information.

112.    The credit reporting agencies understood the defamatory meaning of the statements, as the reported debt negatively impacted Plaintiff's creditworthiness and implied she was delinquent on her financial obligations.

113.    The credit reporting agencies also understood that the statements applied specifically to Plaintiff, as they were linked to her personal identifying information and credit file.

114.    Defendants' false and defamatory statements caused significant harm to Plaintiff,

b. The inability to secure a private student loan necessary to continue her education;

c. Reputational harm, as Plaintiff's creditworthiness was impaired; and

d. Emotional distress caused by the damage to her financial reputation and opportunities.

115.    Under Pennsylvania law, statements that harm a person's financial reputation are considered defamatory per se, meaning Plaintiff is not required to prove special damages. Constantino v. Univ. of Pittsburgh, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001).

116.    Defendants acted negligently, recklessly, or with actual malice in making and publishing these false statements, as they knew or should have known that the debt was inflated and unverified, and failed to investigate its accuracy.

117.    Defendants' actions were not protected by any privilege or justification, as their statements violated federal and state laws, including the Fair Credit Reporting Act (FCRA) and Pennsylvania Fair Credit Extension Uniformity Act (FCEUA).

118.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff suffered financial harm, reputational damage, emotional distress, and lost opportunities, including delayed education and career progression.

119.    Plaintiff is entitled to recover all damages caused by Defendants' defamatory actions under Pennsylvania law, including compensatory damages for reputational harm, emotional distress, and punitive damages to deter such conduct in the future.

**ELEVENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

120.    Plaintiff incorporates by reference all preceding paragraphs as though fully set

121. Under Pennsylvania law, a claim for intentional infliction of emotional distress (IIED) requires the plaintiff to establish:

a. The defendant engaged in extreme and outrageous conduct;

b. The conduct was intentional or reckless;

c. The conduct caused emotional distress; and

d. The emotional distress was severe.

Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998); Restatement (Second) of Torts § 46.

122. Defendants engaged in extreme and outrageous conduct by:

a. Reporting a false and inflated debt amount of $8,103 to credit reporting agencies, knowing it was unsubstantiated and improperly calculated;

    a. Failing to provide Plaintiff with proper notice of the alleged debt or an opportunity to dispute or validate it;

    b. Communicating Plaintiff's sensitive financial information to unauthorized third parties, including a postal box not controlled by Plaintiff, violating her privacy;

    c. Employing unfair and unconscionable collection practices to induce Plaintiff into paying an alleged debt she did not owe;

    d. Employing deceptive and abusive collection practices through their "Collection Cost: Make Whole Method" to arbitrarily inflate the alleged debt; and

    e. Willfully disregarding the harm their actions would cause to Plaintiff's credit, financial stability, and emotional well-being.

123. Pennsylvania law recognizes that conduct is extreme and outrageous when it is

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998); Restatement (Second) of Torts § 46, cmt. d.

124. Defendants acted intentionally and/or recklessly, knowing or having reason to know that their conduct would cause Plaintiff severe emotional distress, as it directly impacted her financial stability, education, and career prospects.

125. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including:

    a. Anxiety and depression caused by the damage to her credit and financial reputation;

    b. Persistent fear and uncertainty about her financial future and ability to continue her education;

    c. Migraines

    d. Physical manifestations of stress, including exacerbation of existing medical conditions requiring treatment; and

    e. Loss of sleep and emotional well-being due to the reputational and financial harm caused by Defendants' actions.

126. Pennsylvania law permits recovery for IIED when the emotional distress is severe and supported by competent evidence, including medical documentation or testimony regarding the plaintiff's distress. Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987).

127. Defendants' conduct was reckless, willful, and wanton, demonstrating a deliberate disregard for Plaintiff's rights and well-being, and was so extreme and outrageous as

128. As a result of Defendants' intentional and reckless actions, Plaintiff suffered severe emotional distress, financial harm, and reputational damage, and is entitled to recover compensatory and punitive damages under Pennsylvania law.

## TWELFTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(Plead in the Alternative to Intentional Infliction of Emotional Distress)*

129. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

130. Under Pennsylvania law, a claim for negligent infliction of emotional distress (NIED) may arise where:

a. The defendant owed a duty of care to the plaintiff;

b. The defendant breached that duty;

c. The breach caused the plaintiff to suffer emotional distress; and

d. The emotional distress was foreseeable and severe.

Toney v. Chester County Hosp., 36 A.3d 83, 95 (Pa. 2011); Restatement (Second) of Torts § 313.

131. Defendants owed Plaintiff a duty of care to act reasonably and lawfully in the collection and reporting of the alleged debt, as required by federal and state laws, including the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), and general Pennsylvania tort law.

    a. Reporting an inflated and unverified debt amount to credit reporting agencies without verifying its accuracy or providing proper notice to Plaintiff;

    b. Failing to provide Plaintiff with the required validation notice, thereby depriving her of the opportunity to dispute or verify the debt;

    c. Improperly inflating the debt amount through excessive and arbitrary collection fees using their "Collection Cost: Make Whole Method"; and

    d. Communicating Plaintiff's sensitive financial information to unauthorized third parties, including a postal box not controlled by Plaintiff, violating her privacy.

133. Under Pennsylvania law, NIED may arise where the plaintiff suffers emotional distress:

a. As a direct result of the defendant's negligent actions that create a foreseeable risk of physical impact or harm;

b. From the defendant's breach of a special duty of care or a pre-existing legal relationship; or

c. Due to the defendant's negligent actions causing emotional distress accompanied by physical manifestations of harm. Toney v. Chester County Hosp., 36 A.3d 83, 95 (Pa. 2011); Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 609 (Pa. Super. Ct. 1993).

134. Defendants' actions caused Plaintiff foreseeable emotional distress, as they were negligent in their debt collection and credit reporting practices, which directly affected Plaintiff's financial stability, reputation, and educational and professional opportunities.

135. As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe emotional and physical distress, including:

a. Anxiety, depression, and fear caused by the damage to her credit and financial reputation;

b. Persistent uncertainty and anxiety about her ability to continue her education and achieve her professional goals;

c. Physical manifestations of stress, including migraines and exacerbation of existing medical conditions requiring treatment; and

d. Loss of sleep, emotional stability, and physical well-being.

136. Pennsylvania law recognizes that a defendant's negligent breach of a duty that foreseeably causes severe emotional distress, even absent physical harm, may support a claim for NIED where there is a special relationship between the parties or where the defendant's conduct creates a high risk of harm.

137. Defendants' relationship with Plaintiff as debt collectors and furnishers of credit information, coupled with their legal obligations to verify and validate the alleged debt, established a special duty of care that was breached by Defendants' negligent actions.

138. Defendants' actions and omissions created a foreseeable risk of harm to Plaintiff's emotional well-being, given the significant consequences of false credit reporting, improper debt collection practices, and reputational harm.

139. As a result of Defendants' negligent conduct, Plaintiff is entitled to recover damages for emotional distress, including compensatory damages for the severe and foreseeable harm caused by Defendants' actions under Pennsylvania law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, **Mariamou Tangara**, respectfully requests this Court enter

1. Actual damages for financial harm, credit damage, and emotional distress.

2. Consequential damages

3. Treble damages pursuant to the UTPCPL.

4. Punitive damages to deter Defendants' egregious misconduct.

5. An injunction requiring Defendants to correct inaccurate credit reporting and cease all further collection activities related to this alleged debt.

6. Attorney's fees and costs of this action.

7. Any other relief this Court deems just and equitable.

Respectfully Submitted,

Mariamou Tangara

*Mariamou Tangara*

mtangara002@gmail.com

Date: November 21, 2024

# DISCOVERY REQUEST PURSUANT TO PENNSYLVANIA RULES OF CIVIL PROCEDURE

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

---

**Mariamou Tangara,**

Plaintiff,

v.

**Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management; ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc.,**

Defendants.

---

**Case No.: GD-24-013405**

---

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES, AND REQUESTS TO ADMIT PURSUANT TO Pa. R.C.P. Nos. 4009.1, 4003.5, and 4014**

Plaintiff, Mariamou Tangara, by and through her undersigned counsel, pursuant to Rules

Defendants produce the following documents, answer the following interrogatories, and admit or deny the following statements for inspection, copying, and response. Defendants are requested to respond to these requests within thirty (30) days of service of this request, as provided under Pennsylvania Rules of Civil Procedure.

## DEFINITIONS

1. "Document" is defined broadly in accordance with Pa. R.C.P. No. 4009.1 to include any written, printed, or electronically recorded material, including emails, correspondence, records, bills, invoices, memoranda, analyses, telephone records, printouts, reports, minutes, books, drawings, photographs, video and audio recordings, and all other writings and recordings of every kind that are in your possession, custody, or control.

2. "Communication" means any written, oral, electronic, or other form of expression or transmission of information.

3. "Person" includes any natural person, corporate entity, partnership, association, governmental entity, or other legal entity.

4. "You" and "your" refer to Defendants, their agents, employees, officers, directors, and any other person acting on their behalf.

## INSTRUCTIONS

- Each response should be accompanied by the sworn statement of a responsible officer or agent of Defendants.

- If you object to any of the requested documents, please state the reason for the objection and identify any withheld documents.

- All document requests pertain to the timeframe from January 1, 2020, to the present, to capture all relevant actions leading up to and including the actions complained of.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. **All Documents and Communications** relating to any credit or debt collection activities conducted by Defendants, including but not limited to policies, procedures, training materials, and guidelines.

2. **All Documents and Communications** concerning the alleged debt owed by Plaintiff, including but not limited to account statements, invoices, ledgers, and correspondence with any credit reporting agencies.

3. **All Documents and Communications** reflecting any communication with Plaintiff, including but not limited to postal mail, emails, recorded telephone calls, notes of telephone conversations, and internal memos.

4. **All Documents and Communications** related to any complaints filed against Defendants regarding their debt collection practices, including but not limited to complaints received from consumers, governmental agencies, or any regulatory bodies within the last five years.

5. **All Documents and Communications** concerning the calculation, assessment, or imposition of any fees, charges, or interest on Plaintiff's alleged debt, including the basis for such calculations under the "Collection Cost: Make Whole Method."

6. **All training materials and employment records** related to employees who handled Plaintiff's account or who are involved in debt collection or credit reporting for Defendants.

7. **All contracts, agreements, or other arrangements** between Defendants and any third parties regarding the collection of debts or the reporting of credit information, including agreements with creditors such as the University of Pittsburgh.

8. **All internal audits, reviews, or investigations** into Defendants' compliance with the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), or any other relevant state or federal laws.

9. **All Documents and Communications** demonstrating Defendants' reporting of debts to credit reporting agencies, including data furnishing protocols, dispute resolution procedures, and any records of disputes concerning the accuracy of the information reported.

10. **All electronic records and metadata** associated with Plaintiff's account and Defendants' handling of Plaintiff's alleged debt, including data on electronic communications, changes to account information, and logs of access to Plaintiff's account information.

## INTERROGATORIES

1. Detail the process and criteria used by Defendants for verifying the accuracy of debts before reporting them to credit reporting agencies from January 1, 2020, to the present.

2. List all employees involved in the processing or handling of Plaintiff's alleged debt, including their job titles, roles, and responsibilities related to debt collection or credit reporting.

3. Describe any and all training provided to employees responsible for debt collection or credit reporting from January 1, 2020, to the present, specifically addressing how compliance with federal and state laws is ensured.

**REQUESTS TO ADMIT**

1. Admit that Defendants did not send a debt validation notice to Plaintiff before reporting the alleged debt to credit reporting agencies.

2. Admit that Defendants reported an alleged debt amount of $8,103 to credit reporting agencies concerning Plaintiff.

3. Admit that Defendants have no documentary evidence that substantiates the alleged debt amount of $8,103 as owed by Plaintiff.

Plaintiff reserves the right to amend or supplement this request and to conduct further discovery based on the information received in response to this request.

Respectfully submitted,

Mariamou Tangara

Date: November 21, 2024

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

COVER SHEET

| Plaintiff(s) <br> Mariamou Tangara | GD-24-013405 |
|---|---|
| | Case Number : |
| | Type of pleading : <br><br> Praecipe for Writ of Summons |
| | Filed on behalf of <br> Mariamou Tangara |
| **Vs.** | |
| Defendant(s) <br> Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management; ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc. | (Name of the filing party) |
| | ☐ Counsel of Record <br><br> ☐ Individual, If Pro Se |
| | Address, Telephone Number, and Email Address: <br> 1300 Fairmount Ave, 706, Philadelphia, PA <br> (267)-403-5882 <br> mtangara002@gmail.com |
| | Attorney's State ID |
| | Attorney's Firm ID |

**COMMONWEALTH OF PENNSYLVANIA**

**COUNTY OF ALLEGHENY**

COURT OF COMMON PLEAS, CIVIL DIVISION

**Praecipe for Writ of Summons**

To the Prothonotary:

Issue a Writ of Summons in Civil Action against the defendant(s) listed below. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully,

**Mariamou Tangara**

**Plaintiff:**

Mariamou Tangara

**Defendant(s):**

Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management; ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc.

**Date:** November 19, 2024

**COMMONWEALTH OF PENNSYLVANIA**

**COUNTY OF ALLEGHENY**

COURT OF COMMON PLEAS, CIVIL DIVISION

**Case No.:**  GD-24-013405

**Plaintiff:**

Mariamou Tangara

**v.**

**Defendant(s):**

Continental Service Group, LLC; ConServe; Conserve Accounts Receivable Management;

ConServe, Inc.; Conserve, NY; ConServe-ARM; ConServe-ARM, Inc.

200 CrossKeys Office Park
Fairport, NY 14450
Phone: 585-421-1000; 800-724-7500

# WRIT OF SUMMONS

You are notified that the Plaintiff has commenced an action against you.

10666232.1.46-48

# Court of Common Pleas

November 19          24
_____Term, 20 _____

No. ___GD-24-013405___

Mariamou Tangara
_____

*Plaintiff*

vs.

Continental Service Group, LLC; ConServe; Conserve Accounts
Receivable Management; ConServe, Inc.; Conserve, NY;
ConServe-ARM; ConServe-ARM, Inc.
_____

*Defendant*

# SUMMONS